# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 12-20630

_____

United States Court of Appeals
Fifth Circuit

**FILED**
June 2, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

INNOCENT RUTAHAGARA BATAMULA,

Defendant-Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before DENNIS and PRADO, Circuit Judges, and BROWN, District Judge.[*]
PER CURIAM:

Innocent Rutahagara Batamula, a citizen of Tanzania, after entering the United States on a student visa, marrying a United States citizen, and applying for a change in his immigration status, pleaded guilty pursuant to a written plea agreement to one count of making a false statement to a federal agent, 18 U.S.C. § 1001, and one count of making a false statement in an application for a passport, 18 U.S.C. § 1542. The court sentenced Batamula to time served, one year of supervised release, and a $2,000 fine. Batamula did not appeal from his conviction or sentence but filed a motion for habeas corpus

_____

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

12-20630

pursuant to 28 U.S.C. § 2255, asserting that his retained attorney provided ineffective assistance of counsel under *Padilla v. Kentucky*, 559 U.S. 356 (2010), by failing to advise him that the offenses to which he was pleading guilty would result in his deportation.  The district court denied Batamula's § 2255 motion, we granted a certificate of appealability, and Batamula now appeals.  For the reasons assigned hereinafter, we REVERSE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.

## I.

Batamula is a Tanzanian citizen who entered the United States in 2001 on a student visa and has since resided in Houston, Texas.  In 2008, Batamula applied for and obtained a United States passport for his biological son, B.B.,[1] a citizen and then-resident of Tanzania.  To secure the passport, Batamula used the name and birth date of a different Tanzanian child whom we will refer to as Z.M.—born in Tanzania to a couple with whom Batamula was acquainted.  Approximately three years later, on May 11, 2011, Z.M.'s parents applied for a passport for their son and discovered that a passport had already been issued in his name but displayed a photograph of someone else's child—Batamula's son, B.B.  When questioned by federal agents, Batamula said that he did not know the child pictured in the fraudulent passport.

Batamula was initially charged with one count of false representation to a United States agent under 18 U.S.C. § 1001.  Thereafter, a superseding information was filed that additionally charged one count of making a false statement in an application for a United States passport in violation of 18

---

[1] To protect the identity of the minor children involved, we will refer to them by their first and last initials.

12-20630

U.S.C. § 1542.  On November 17, 2011, pursuant to a written plea agreement, Batamula entered a plea of guilty to both counts.

Batamula's guilty plea proceeding was conducted alongside another non-citizen defendant who was pleading guilty to an unrelated felony charge. During the proceeding, Batamula informed the court that he spoke with his attorney about the charges approximately ten times, that his attorney answered all of his questions, that he was "fully satisfied with the advice and counsel provided" by his attorney, and that his attorney had done everything asked of him.  Moments before accepting the plea, the court addressed both Batamula and the other defendant present at the proceeding, stating: "The offenses that you're pleading guilty to are felonies.  That means that each of you will likely be deported after you serve your sentence."  The court then found that Batamula's guilty plea was knowing and voluntary and accepted his guilty plea to both counts.

On May 1, 2012,  Batamula moved to vacate or set aside his conviction and sentence pursuant to 28 U.S.C. § 2255, contending that his attorney failed to provide effective assistance of counsel under *Padilla* by failing to advise him that pleading guilty to both charges would result in his deportation.  He averred in a sworn affidavit that, if his attorney had advised him that pleading guilty to the charges would make him "mandatory [*sic*] deportable" he would have refused to "make the plea," would have pleaded not guilty, and would have insisted on going to trial "as that would have been [his] only alternative to avoid deportation."  Batamula attached to his habeas petition a sworn affidavit from his retained counsel, which stated that the attorney "advised [Batamula] on immigration consequences solely based on the language (if any)[2]

---

[2] The written plea agreement contains no reference whatsoever to the immigration consequences of Batamula's guilty plea.

3

of the plea agreement provided by the office. I did not advice [*sic*] him that conviction in a two count indictment in his case would make him mandatory [*sic*] deportable." Additionally, Batamula presented the affidavit of an immigration attorney who attested that, pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii),[3] Batamula's guilty plea rendered him "presumptively deportable" because his convictions are considered crimes of moral turpitude.[4]

The district court granted the Government's motion for summary judgment and denied Batamula's § 2255 motion without an evidentiary hearing, finding that he had "shown no right to relief."[5] As relevant here, the

---

[3] 8 U.S.C. § 1227(a)(2)(A)(ii) provides that, "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." Batamula's two crimes, although arguably related and thus part of one criminal "scheme," would likely be construed as two distinct crimes for purposes of this statute, as each is a "complete, individual, and distinct crime . . . even though . . . [they may] be part of an overall plan of criminal misconduct." *Animashaun v. INS*, 990 F.2d 234, 238 (5th Cir. 1993); *see also Okoro v. INS*, 125 F.3d 920, 926–27 (5th Cir. 1997); *Iredia v. INS,* 981 F.2d 847, 848–49 (5th Cir. 1993). Neither party raised the issue of whether Batamula's crimes constitute separate "schemes of criminal misconduct," and we need not address it to resolve this case.

[4] Although the Immigration and Nationality Act does not contain a definition of "crimes of moral turpitude," crimes involving an element of fraud are generally considered to be such. *See, e.g.*, *Omagah v. Ashcroft,* 288 F.3d 254, 259–60 (5th Cir. 2002) (finding that conspiracy to use illegal immigration documents constitutes a crime of moral turpitude because the crime "involves fraud as a central ingredient and requires proof of *mens rea* sufficient to classify it as a crime of moral turpitude").

[5] The district court's order granting the Government's summary judgment motion and dismissing Batamula's habeas petition concluded that the appeal waiver provision in Batamula's plea agreement barred him from collaterally challenging his conviction and, alternatively, that he could not establish prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984) and *Padilla*. This court granted Batamula's application for a certificate of appealability, authorizing an appeal regarding (1) whether the appeal waiver provision in Batamula's plea agreement bars his habeas petition; and (2) whether the district court properly granted the Government's motion for summary judgment by finding that Batamula could not establish prejudice under *Strickland*. On appeal, however, the Government expressly declined to seek enforcement of the appeal waiver and argued only that we should affirm the summary judgment order below because Batamula is foreclosed from establishing

district court concluded that "even if Batamula's attorney was deficient in failing to inform Batamula of the immigration consequences of his guilty plea, Batamula has not shown that such a deficiency prejudiced him because before accepting his guilty plea the court informed him that he would likely be deported after he served his sentence. . . [Batamula therefore] cannot satisfy the [*Strickland v. Washington*, 466 U.S. 668 (1984)] prejudice prong[.]" Thus, the district court held as a matter of law that if a judge, during the Federal Rule of Criminal Procedure 11 ("Rule 11") proceeding, informs the defendant that deportation is a likely result of his guilty plea, any prejudice caused by counsel's failure to advise his client regarding that danger is thereby cured, or the defendant's claim based thereon is forfeited or waived, and the defendant is therefore categorically foreclosed from subsequently demonstrating prejudice under *Padilla* and *Strickland*.

This is an issue of law which we review *de novo*.[6] *See, e.g.*, *United States v. Ghali*, 699 F.3d 845, 846 (5th Cir. 2012) ("When a district court denies a motion under 28 U.S.C. § 2255, we review its legal conclusions de novo.").

**II**.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (citing *Missouri v. Frye*, 132 S. Ct. 1399, 1407-08 (2012); *Padilla*, 559 U.S. at 373; *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). "During plea negotiations

---

prejudice under *Strickland* and *Padilla*. Accordingly, we do not address or consider the enforceability of the appeal waiver.

[6] The narrow issue of law that we are presented with in this case—whether a judicial warning or admonition of likely deportation alone forecloses the defendant's claim that his counsel's deficiency under *Padilla* prejudiced the plea process—was expressly left open by this court when we considered the relevance of a judicial admonishment to the *Strickland* prejudice inquiry. *See United States v. Kayode*, 777 F.3d 719, 729 (5th Cir. 2014) ("We need not decide today whether Kayode's affirmative responses to the[] [judge's] admonishments [that his conviction may lead to deportation], standing alone, would be sufficient to defeat the prejudice prong under *Strickland*.").

defendants are 'entitled to the effective assistance of competent counsel.'" *Id*. (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The right to effective representation during the pre-guilty-plea stage of proceedings requires defense counsel to, *inter alia*, fulfill the "quintessential[] . . . duty . . . to provide [the] client with available advice about an issue like deportation." *Padilla*, 559 U.S. at 371.

The familiar two-pronged ineffective assistance analysis set forth in *Strickland* applies to alleged violations of the right to effective assistance of counsel during pre-guilty-plea proceedings. *See Lafler*, 132 S. Ct. at 1384 (citing *Hill*, 474 U.S. at 58); *Frye*, 132 S. Ct. at 1405; *Padilla*, 599 U.S. at 366. Establishing prejudice under *Strickland* in the context of a claim that defense counsel failed to advise the defendant that the entry of his guilty plea would result in deportation requires the defendant to demonstrate a reasonable probability that "but for counsel's unprofessional errors, . . . the outcome of the plea process would have been different." *Lafler*, 132 S. Ct. at 1384 (citing *Strickland* 466 U.S. at 694; *Frye*, 132 S. Ct. at 1410). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Additionally, to demonstrate prejudice and "obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. In conducting this prejudice inquiry "we consider the totality of the circumstances." *United States v. Kayode*, 777 F.3d 719, 725 (5th Cir. 2014).

Recently, emphasizing that it is "counsel's duty, not the court's, to warn of certain immigration consequences," *id.* at 728 (quoting *United States v. Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014)), we held that "[w]arnings from a judge during a plea colloquy are not a substitute for effective assistance

of counsel, and therefore have no bearing on the first *Strickland* prong," *id.* We further reasoned that, "while judicial admonishments are not a substitute for effective assistance of counsel, they are relevant under the second *Strickland* prong in determining whether a defendant was prejudiced by counsel's error." *Id.* at 728-29. Accordingly, we held that a judicial admonishment is one of many factors and circumstances that a court may consider in the fact-based, totality of the circumstances prejudice analysis, *see id.* at 725, but did not determine whether such an admonishment, alone, can remedy or prevent prejudice caused by counsel's failure to provide effective advice about the immigration consequences of the guilty plea, *id.* at 729.

Here, the district court, without conducting an evidentiary hearing, denied Batamula's § 2255 motion, apparently reasoning that a court erases any prejudice resulting from a defense attorney's failure to competently advise a noncitizen defendant regarding the immigration consequences of his guilty plea by informing the defendant during a Rule 11 colloquy that his guilty plea will likely result in his deportation. Alternatively, the district court's holding may be interpreted as a conclusion that the defendant waives or forfeits his ineffective-assistance-of-counsel claim by pleading guilty after receiving such an admonition. In either case, the district court's ruling is based on its conclusion that, as matter of law, a plea colloquy judge's mere statement regarding likely deportation automatically forecloses the petitioner from demonstrating prejudice caused by counsel's ineffective assistance under *Padilla.* Neither the district court nor the Government, however, cites any authority for this categorical rule.[7] In view of the Supreme Court's decisions in *Lafler*, *Frye*, and *Padilla*, which expanded and expounded upon a criminal

---

[7] Nor, for that matter, can it be reconciled with the totality-of-the-circumstances analysis we prescribed in *Kayode*. *Kayode*, 777 F.3d at 725.

defense counsel's Sixth Amendment duties prior to his client's entry of a guilty plea,[8] we are convinced that the district court's legal rule of decision is inconsistent with the Supreme Court's precedents and, therefore, was in error.

**A.**

The Supreme Court has made clear that "[t]he Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." *Lafler*, 132 S. Ct. at 1385. "The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice." *Id.* Convictions by guilty plea—which make up between ninety-four and ninety-seven percent[9] of convictions nationwide—"have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process . . . that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Frye*, 132 S. Ct. at 1407. "Indeed, this Circuit has observed that providing counsel to assist a defendant in deciding whether to plead guilty is '[o]ne of the most precious applications of the Sixth Amendment.'" *United States v. Rivas–Lopez*, 678 F.3d 353, 356 (5th Cir. 2012) (alteration in original) (quoting *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004)). Thus, before a defendant decides whether to plead guilty, "counsel's function as assistant to the

---

[8] *See, e.g.*, *Chaidez v. United States*, 133 S. Ct. 1103, 1110 (2013) (concluding that *Padilla* "br[oke] new ground" by holding that the Sixth Amendment requires counsel to advise his client about immigration consequences—a "collateral" consequence—of conviction).

[9] "Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas." *Frye*, 132 S. Ct. at 1407 (citing, *inter alia*, *Padilla*, 559 U.S. at 372 ("Pleas account for nearly 95% of all criminal convictions.")); Bureau of Justice Statistics, *Sourcebook of Criminal Justice Statistics Online*, tbl.5.22.2009, http://www.albany.edu/sourcebook/pdf/t5222009.pdf)).

defendant [gives rise to] the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions" after "mak[ing] reasonable investigations." *Strickland*, 466 U.S. at 688, 691.

Counsel has "the critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement,'" *Padilla*, 559 U.S. at 370 (quoting *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)), an obligation that requires counsel to advise a "noncitizen client that he faces a risk of deportation," *id.* at 374. Effective advice from counsel regarding the deportation consequences of conviction is essential to provide constitutionally adequate representation during the pre-plea proceedings because, as the Supreme Court has repeatedly recognized, "'[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'" *Id.* at 368 (alteration in original) (quoting *INS v. St. Cyr*, 533 U.S. 289, 322 (2001)). Given the Court's repeated emphasis on the paramount importance of providing effective representation and competent advice regarding the immigration consequences of conviction before entry of the defendant's guilty plea, we cannot conclude that the prejudice caused by a violation of that duty can be categorically erased by a judge's general and laconic statement during the plea colloquy that deportation is "likely," after that bargaining process is complete, and immediately prior to the court's acceptance of the guilty plea. *See, e.g.*, *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("[T]he adversarial process protected by the Sixth Amendment requires that the accused have '*counsel acting in the role of an advocate*.'") (emphasis added) (quoting *Anders v. California*, 386 U.S. 738, 743 (1967)); *Padilla*, 559 U.S. at 370–71; *see also Chaidez v. United States*, 133 S. Ct. 1103, 1105 (2013) ("[T]his Court held [in *Padilla*] that the Sixth Amendment requires

an *attorney* for a criminal defendant to *provide advice* about the risk of deportation arising from a guilty plea." (emphasis added)).

Indeed, as the Supreme Court in *Lafler* and *Frye* makes clear, if a full and fair trial or an otherwise voluntary guilty plea cannot "inoculate[] [counsel's] errors in the pretrial process" from collateral attack under *Strickland, see Frye*, 132 S. Ct. at 1407, neither can a trial judge's mere statement at a plea colloquy that deportation is "likely" function to bar a petitioner from demonstrating that he was prejudiced by counsel's deficiencies during the pre-guilty-plea stage of proceedings. More specifically, in *Frye* the Court rejected the State's argument that, despite counsel's failure to inform Frye of a formal plea offer from the prosecution, Frye was not "deprived of any legal benefit to which he was entitled" because "the guilty plea that was [ultimately] accepted, and the plea proceedings concerning it in court, were all based on accurate advice and information from counsel." *Id.* at 1406. The State further contended that the "ultimate goal of the Sixth Amendment— reliability of Mr. Frye's conviction—was met by Mr. Frye's knowing, intelligent, and voluntary admission of guilt." Brief for Petitioner at 33, *Missouri v. Frye*, 132 S. Ct. 1399 (2012) (No. 10-444). As it did in *Padilla*, the Court expressly rejected the State's arguments that a guilty plea that was entered after the trial court fulfilled its obligation to ensure the voluntariness of that plea "supersedes errors by defense counsel." *Frye*, 132 S. Ct. at 1406.

Similarly, the Court in *Lafler* rejected the State and Solicitor General's argument that *Strickland* prejudice cannot arise from defective representation during plea bargaining if the defendant is later convicted after a fair trial. *Lafler*, 132 S. Ct. at 1385. The Court reasoned that "[t]he fact that respondent is guilty does not mean he was not entitled by the Sixth Amendment to effective assistance or that he suffered no prejudice from his attorney's deficient

performance during plea bargaining." *Lafler*, 132 S. Ct. at 1388. The Court in both *Lafler* and *Frye* therefore made clear that if the defendant establishes ineffective assistance of counsel during the plea negotiation stage of proceedings, a subsequent, otherwise-voluntary guilty plea or even a full and fair trial does not necessarily "wipe[] clean any deficient performance by defense counsel during plea bargaining." *Id.* Likewise, a judge's admonition at the plea colloquy that deportation is "likely" does not automatically "wipe clean" any prejudice caused by counsel's failure to advise his client of the immigration consequences of the guilty plea. *See id.; see also Frye*, 132 S. Ct. at 1406-08.

Our conclusion that the district court's plea colloquy warning does not bar Batamula from demonstrating prejudice caused by counsel's failure to advise him of the deportation consequences of his plea is further confirmed by the *Padilla* Court's own discussion of similar admonitions. The Court specifically recognized that defendants in many jurisdictions receive generalized deportation warnings on plea forms or at plea colloquies. *See Padilla*, 559 U.S. at 374 n.15 (noting that many states, including Kentucky, "currently . . . provide[] notice of possible immigration consequences"). The Court never intimated that such admonitions could prove fatal to ineffectiveness claims, rejecting arguments from several states appearing as amici curiae that defense counsel need not be constitutionally required to advise their clients regarding deportation consequences of guilty pleas because "states and judges are already addressing" the issue. *See* Brief for the State of Louisiana et al. as Amici Curiae in Support of Respondent at 24-26, *Padilla v. Kentucky*, 559 U.S. 356 (2010) (No. 08-651). To the contrary, the Court cited such practices in support of its conclusion that "[t]he severity of deportation— 'the equivalent of banishment or exile'—only underscores how critical it is for

12-20630

*counsel* to inform her noncitizen client that he faces a risk of deportation." *Padilla*, 559 U.S. at 373-74 (citation omitted) (emphasis added).

Moreover, the Supreme Court has long contrasted the unique and critical obligations of defense counsel during the plea bargaining process with the far more limited role of a district court to ensure a minimally valid guilty plea, further supporting our conclusion that the judicial warning of "likely" deportation does not prevent prejudice caused by counsel's deficient performance in fulfilling his constitutional obligation to serve as a client's advocate and advisor before deciding whether to plead guilty. *See Frye*, 132 S. Ct. at 1406; *Lafler*, 132 S. Ct. at 1390; *Padilla*, 559 U.S. at 364–65. The judicial plea colloquy merely "assist[s] the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *McCarthy v. United States*, 394 U.S. 459, 465 (1969). Because a judge "cannot investigate the facts . . . or participate in those necessary conferences between counsel and accused which sometimes partake of the inviolable character of the confessional," a judge cannot discharge the obligations of counsel for the accused. *Powell v. Alabama*, 287 U.S. 45, 61 (1932). Indeed, pursuant to a 2013 amendment, Rule 11 now requires a district court, before accepting a guilty plea, to state to every defendant "that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future." Fed. R. Crim. P. 11(b)(1)(O). The Advisory Committee, in a note regarding this provision, specified that the Rule requires only that the court provide a "generic warning, not specific advice concerning the defendant's individual situation." Fed. R. Crim. P. 11 advisory committee's note (2013 Amendments, Subdivision (b)(1)(O)). Thus, distinct from defense counsel's role, Rule 11 merely requires the court to make a general statement regarding possible

12

immigration consequences to ensure the defendant's plea is entered knowingly, "without attempting to determine the defendant's citizenship." *Id.* Indeed, Rule 11 mandates that "[t]he court must not participate in [plea] discussions"; therefore, the judge is prohibited from advising or counseling the defendant regarding the advantages and disadvantages of pleading guilty in his particular case. Fed. R. Crim. P. 11(c)(1). These differences between the role of the court and the duties of effective defense counsel explain the essential distinction between the Fifth Amendment plea voluntariness analysis and the Sixth Amendment ineffective-assistance-of-counsel analysis. *See Lafler*, 132 S. Ct. at 1390 ("An inquiry into whether the rejection of a plea is knowing and voluntary, . . . is not the correct means by which to address a claim of ineffective assistance of counsel.").

Further, and perhaps most significantly, by the time the plea colloquy occurs, the plea bargaining process is over—and with it, defense counsel's opportunity to negotiate and advise the client based on an adequate understanding of deportation consequences. Counsel is obligated to effectively investigate and advise his client regarding immigration consequences "[b]*efore* [the client] decid[es] whether to plead guilty," a decision made before the judicial plea colloquy occurs. *See Padilla*, 559 U.S. at 364 (emphasis added). If the negotiation process that preceded the plea hearing was not informed by counsel and his client's consideration of the immigration consequences of the plea, a judge's statement that warns the defendant of likely deportation, provided *after* counsel's opportunity to effectively represent and advise his client has passed, does not alone prevent or remedy any prejudice that may have been caused by counsel's deficient representation nor does it foreclose the defendant's ability to bring a Sixth Amendment claim of ineffective assistance of counsel.

Because "an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney," *Brady v. United States*, 397 U.S. 742, 748 n.6 (1970), information regarding deportation disclosed by the judge for the first time at the plea colloquy may not spur a noncitizen defendant to reassess the advantages and disadvantages of a plea that her attorney has advised her to take. *See Padilla*, 559 U.S. at 370-71 (stating that noncitizens are "a class of clients least able to represent themselves"). As Batamula asserts on appeal, it defies logic to presume that a defendant can instantaneously and properly assess the full implications of the district court's warning at the colloquy if his attorney has failed to advise him of that danger and failed to advocate for his avoidance of it by, for example, seeking a more favorable plea bargain before the plea proceeding commences. Rather, a defendant at a plea colloquy who receives a judicial admonishment that deportation is "likely," but who has not received effective advice from counsel, may reasonably "interpret[] his lawyer's silence [in the face of the admonition] to mean that pleading guilty would not place him in jeopardy of deportation[.]" *See United States v. Bonilla*, 637 F.3d 980, 984-85 (9th Cir. 2011). As the commentary to the American Bar Association's Standards aptly states:

> The court's warning comes just before the plea is taken, and may not afford time for mature reflection. The defendant cannot, without risk of making damaging admissions, discuss candidly with the court the questions he or she may have. Moreover, there are relevant considerations which will not be covered by the judge in his or her admonition. A defendant needs to know, for example, the probability of conviction in the event of trial. Because this requires a careful evaluation of problems of proof and of possible defenses, few defendants can make this appraisal without the aid of counsel.

ABA Standards for Criminal Justice, Pleas of Guilty 14-3.2 cmt. at 118 (3d ed. 1999); *see also id.* at 126 ("[O]nly defense counsel is in a position to ensure that

12-20630

the defendant is aware of the full range of consequences that may apply in his or her case.").[10]

Accordingly, the mere fact that a defendant, who has already signed a plea agreement upon counsel's advice, is told by the trial judge that the plea will likely result in deportation does not foreclose the defendant's ability to demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59.[11] Were we to hold that the judge's mere statement to Batamula during his plea colloquy that he would "likely" be deported vitiated his ability to establish prejudice under *Strickland* and *Padilla*, we would be turning a blind eye to the reality of the plea bargaining and plea colloquy process and flouting the Supreme Court's mandate that a defendant has a constitutionally protected right to the effective assistance of counsel *throughout* the pre-plea stage—a right that carries more than can be supplied by a judge's general and equivocal last-moment warning that deportation is likely to result from the guilty plea. "[C]riminal defendants require effective counsel *during plea negotiations*. Anything less . . . might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." *Frye*, 132 S. Ct. at 1407–08 (emphasis added) (internal quotation marks omitted) (second alteration in original).

**B.**

To the extent that the district court's ruling can be interpreted as a holding that Batamula, by pleading guilty in compliance with Rule 11, forfeited his right to collaterally attack his guilty plea under *Padilla*, the Supreme Court's cases are clearly to the contrary. The Court has made clear that the

___

[10] The Supreme Court has recognized that ABA standards "can be important guides" in the ineffective-assistance-of-counsel analysis. *See Frye*, 132 S. Ct. at 1408.

[11] We note that this warning remains relevant to the determination of prejudice, which demands consideration of the totality of the circumstances. *See Kayode*, 777 F.3d at 728–29.

right to raise an ineffective-assistance-of-counsel claim to challenge the validity of a conviction by guilty plea is not forfeited by entry of a guilty plea in compliance with Rule 11.

Addressing the general question of the extent to which constitutional claims survive the entry of a guilty plea, the Supreme Court has repeatedly stated that a guilty plea effects a forfeiture of certain constitutional claims *if* the plea is entered knowingly and voluntarily and with competent assistance and advice by defense counsel. *See, e.g., Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, *who has been advised by competent counsel*, may not be collaterally attacked."), *disapproved of on other grounds by Puckett v. United States*, 556 U.S. 129 (2009) (emphasis added).  Claims of ineffective assistance of counsel that affected the validity of the guilty plea are necessarily excluded from this general rule that constitutional defenses are forfeited by entry of a guilty plea. *See, e.g., Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, . . . [h]e may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [deficient.]"); *see also* 5 Wayne R. LaFave et al., Criminal Procedure, The Adversary System and the Determination of Guilt and Innocence § 21.6(a) (3d ed. 2014) (concluding that the general rule that defendants forfeit certain constitutional claims upon pleading guilty "has no application to defects which go directly to the guilty plea itself," including "defects concerning advice of counsel," because such circumstances "taint the plea").

The Court has therefore made it abundantly clear that although entering a guilty plea results in the forfeiture of certain constitutional claims, it does

not bar a post-conviction collateral attack on the conviction and sentence based upon ineffective representation leading up to the entry of the guilty plea. *Padilla* exemplifies this well-established rule that entry of a guilty plea, despite generic warnings from the court regarding the possible consequences of the guilty plea, does not foreclose the defendant from demonstrating that counsel's ineffective advice regarding the deportation consequences of conviction prejudiced the proceedings. *See Padilla*, 559 U.S. at 374 & n.15.

## CONCLUSION

For these reasons, we conclude that a judge's statement at the guilty plea proceeding that deportation is "likely" is not dispositive of whether a petitioner whose counsel failed to advise him regarding the immigration consequences of his plea can demonstrate prejudice as a result therefrom. Batamula thus is not foreclosed from challenging his guilty plea under *Padilla* solely because the district court notified him that deportation following the service of his sentence is "likely," and the district court erred in holding to the contrary. The record is currently insufficiently developed for us to apply the fact-intensive, totality of the circumstances prejudice analysis[12] necessary to determine whether Batamula is entitled to relief on his Sixth Amendment claim. We therefore REVERSE and REMAND[13] for further proceedings consistent with this opinion.[14]

---

[12] *See, e.g.*, *Sears v. Upton,* 561 U.S. 945, 955 (2010) ("[T]he *Strickland* [prejudice] inquiry requires [a] probing and fact-specific analysis . . . ."); *see also Kayode*, 777 F.3d at 725.

[13] All other pending motions are DENIED AS MOOT.

[14] On remand, the district court must determine what further proceedings are necessary—an issue we need not reach today. We note that an evidentiary hearing will be required on remand "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013); *Friedman v. United States*, 588 F.2d 1010, 1015 (5th Cir. 1979) (per curiam); *Reagor v. United States*, 488 F.2d 515, 517 (5th Cir. 1976) ("Contested fact issues in § 2255 cases must be decided on the basis of evidentiary hearings . . . ."); *see also Machibroda v. United States*, 368 U.S. 487, 494 (1962).