with whom GRAVES, Circuit Judge, joins, dissenting:
The en banc majority’s triple derelictions of its appellate court duties in a single opinion may be a record-breaker. Accordingly, I respectfully dissent.
First, the majority opinion fails to correct the district court’s threshold error of law — its holding that a judicial admonition of possible deportation during a guilty-plea colloquy automatically erases any prejudice caused a defendant by the deficient performance of his counsel. This holding was reversible error for the reasons assigned by the panel opinion. See United States v. Batamula, 788 F.3d 166 (5th Cir.2015). The majority opinion, however, leaves the error unaddressed and uncorrected by passing over it in silence as it attempts to uphold the district court’s judgment on other grounds. In doing so, the majority opinion tacitly encourages other judges to repeat the same error. If the error becomes widely imitated by other district courts, non-citizens’ ineffective assistance of counsel claims established by Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), will be severely undermined in our circuit. The majority opinion’s failure to correct the threshold error by the district court is thus a serious and harmful dereliction of the en banc court’s appellate responsibility.
Second, the majority opinion errs again by tacitly approving the district court’s refusal to grant a federal prisoner an evi- *244 dentiary hearing on his well pleaded motion for habeas corpus under 28 U.S.C. § 2255, although the files and records of the case do not conclusively show that he is entitled to no relief. This court has explained that “where petitioner’s allegations, if proven would entitle him to relief, he is entitled to an evidentiary hearing and an opportunity to prove the truth of the matters asserted” unless his claims are “fully refuted by the record and files.” Powers v. United States, 446 F.2d 22, 24 (5th Cir.1971). The district court’s refusal was therefore an abuse of discretion, and the majority opinion errs in failing to correct it.
Third, in light of the district court’s error and abuse of discretion, the majority opinion should have vacated the district court’s judgment and remanded the case for further proceedings based on the applicable legal principles. Instead, the majority opinion exponentially compounds its own mistakes by improperly acting as a fact-finding tribunal; by finding facts not ruled upon or subjected to adversarial testing below; and by testing the boundaries of its jurisdiction in acting as an immigration court to determine that Bata-mula is irrevocably deportable and therefore incapable of suffering any prejudice because of his ineffectively counseled guilty plea.
I. Substantive Error of Law
In response to Batamula’s 28 U.S.C. § 2255 motion, the district court without granting a hearing or taking evidence, reversibly erred by holding as a matter of law that the guilty plea judge’s generic, unilateral statement during the Federal Rule of Criminal Procedure 11 colloquy that Batamula would “likely be deported” after serving his sentence, by itself, cured any prejudice Batamula may have suffered as a result of his attorney’s failure to properly advise him that his guilty plea to two offenses involving moral turpitude would make him mandatorily deportable. In Padilla, the Supreme Court held that the Sixth Amendment requires an attorney for a noncitizen criminal defendant to provide advice about the risk of deportation arising from a guilty plea.[1] 559 U.S. at 369-70, 130 S.Ct. 1473. The Court noted that “the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel” and recognized that “[t]he severity of deportation — ‘the equivalent of banishment or exile’ — only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation.” Id. at 373-74, 130 S.Ct. 1473 (quoting Delgadillo v. Carmichael, 332 U.S. 388, 390-391, 68 S.Ct. 10, 92 L.Ed. 17 (1947)). If imitated by other habeas courts, the rule imposed by the district court — and left uncorrected by the en banc majority opinion — would render Padilla’s holding null and void by permitting sentencing judges to categorically erase any claim of prejudice and eliminate any chance of relief by simply including a rote “likely deportation” advisory during every guilty plea colloquy.
The erroneous assumption that a generic judicial statement, after the plea has *245 already been entered,[2] that deportation is “likely,” by itself, cures any prejudice caused by counsel’s deficient performance during plea negotiations also ignores the realities of plea negotiations and plea colloquies — primarily the facts that a defendant chooses to plead guilty before the plea hearing and is not likely to change his mind during the hearing. As the Padilla court recognized, “[c]ounsel who possess the most rudimentary understanding of the deportation consequences of a particular criminal offense may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation.” Padilla, 559 U.S. at 373, 130 S.Ct. 1473. In his habeas petition and supporting affidavit, Batamula alleged that if his “plea attorney had correctly informed him about the immigration consequences of his plea, [he] would have plead[ed] not guilty and insisted on going to trial or sought to eliminate one count” from the charge. It is undisputed that if Batamula had successfully eliminated one count, his plea would not have rendered him mandatorily deportable. See 8 U.S.C. § 1227(a)(2)(A)(ii). By ignoring this very real form of prejudice, the categorical rule applied by the district court flouts Padilla’s directive and defeats its impact.
In Missouri v. Frye, — U.S. —, 132 S.Ct. 1399, 1406, 182 L.Ed.2d 379 (2012), the Court made clear, as it did in Padilla, that it has firmly “rejected the argument ... that a knowing and voluntary plea supersedes errors by defense counsel.” See also Lafler v. Cooper, — U.S. —, 132 S.Ct. 1376, 1390, 182 L.Ed.2d 398 (2012) (“An inquiry into whether the rejection of a plea is knowing and voluntary ... is not the correct means by which to address a claim of ineffective assistance of counsel.”). And the Court has long distinguished the unique and critical obligations of defense counsel during the plea bargaining process from the far more limited role of a district court to ensure a minimally valid guilty plea. See Frye, 132 S.Ct. at 1406; Lafler, 132 S.Ct. at 1390; Padilla, 559 U.S. at 364-65, 130 S.Ct. 1473. As the panel opinion in this case aptly explained, the straightforward logic of these cases leads to the conclusion that a sentencing judge’s generic advisory of “likely” deportation does not categorically erase prejudice stemming from the ineffective assistance of counsel in negotiating and advising on the plea. By grounding its decision that Batamula did not suffer prejudice as a result of his counsel’s errors in his immigration status, the en banc majority opinion may have implicitly rejected the categorical approach taken by the district court. But by failing to explicitly correct the district court’s error and adopt the panel’s holding that “a judge’s admonition at the plea colloquy that deportation is ‘likely’ does not automatically ‘wipe clean’ any prejudice caused by counsel’s failure to advise his client of the immigration consequences of the guilty plea,” Ba-tamula, 788 F.3d at 173, the majority opinion has left the door open for other district courts to repeat the same mistake and, in doing so, has imperiled the Sixth Amendment rights of noncitizen defendants in our circuit.
II. Failure to Grant Evidentiary Hearing
Under 28 U.S.C. § 2255, when a federal prisoner alleges facts that, if proven, would entitle him to relief from an unconstitutional sentence, the district court is re *246 quired to grant a hearing to “determine the issue and make findings of fact and conclusions of law with respect thereto” unless “the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.” 28 U.S.C. § 2255(b). In Machibroda v. United States, 368 U.S. 487, 494-95, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), the Supreme Court explained that the relevant “files and records” relate only to proceedings before the district court, not to “occurrences outside the courtroom” or to circumstances that are not “of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection.” The district court, in determining whether summary dismissal is appropriate, is not permitted to make findings on controverted issues of fact without a hearing, United States v. Hayman, 342. U.S. 205, 219-20, 72 S.Ct. 263, 96 L.Ed. 232 (1952), or to judge ex parte the plausibility of a petitioner’s allegations, Walker v. Johnston, 312 U.S. 275, 287, 61 S.Ct. 574, 85 L.Ed. 830 (1941). As this court explained in Powers:
Dismissal of a complaint without a hearing is justified when assuming the factual allegations pleaded by the prisoner to be true (or finding them fully refuted by the record and files) it conclusively appears that he would not be entitled to relief. Conversely stated, where petitioner’s allegations, if proven would entitle him to relief, he is entitled to an evidentiary hearing and an opportunity to prove the truth of the matters asserted.
446 F.2d at 24 (internal citation omitted). In other words, where a petitioner makes specific factual claims that are “not speculative, conclusory, plainly false, or contradicted by the record,” he is entitled to an evidentiary hearing. See United States v. Reed, 719 F.3d 369, 374 (5th Cir.2013).
The district court’s threshold substantive error necessarily stopped short the analysis required by § 2255 — having erroneously concluded that Batamula could not establish prejudice because he was warned that he would “likely” be deported after he served his sentence, the district court did not determine whether his pleadings were otherwise sufficient. In order to warrant relief under Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052 (1984), a petitioner must show that counsel’s performance was deficient and that the deficient performance prejudiced the defense. “In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.” Lafler, 132 S.Ct. at 1384 (citing Frye, 132 S.Ct. 1399; Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).
Batamula’s allegations, if proven, meet this standard, and his motion and the files and records of his case do not “conclusively show” that he is not entitled to relief. In his § 2255 motion, Batamula asserted that “[his] plea lawyer did not advise him that a guilty plea to two [crimes of moral turpitude] would render his deportation presumptively mandatory” and that “[i]f [his] plea attorney had correctly informed him about the immigration consequences of his plea, [he] would have plead[ed] not guilty and insisted on going to trial or sought to eliminate one count.” In his affidavit, Batamula again asserted that his attorney “told [him] nothing of the legal consequences under the immigration laws of the U.S. to the plea of guilty [he] made to two counts” and that, had he received the correct information, he would have refused to take the plea and would have attempted to proceed to trial on the original one count indictment, “as that would have been [his] only alternative to avoid *247 deportation.” Leroy Simms, Batamula’s trial attorney, stated in an affidavit that he “advised [Batamula] on immigration consequences solely based on the language (if any) of the plea agreement provided by the [U.S. Attorney’s] office.” It is undisputed that the written plea agreement contained no reference to the immigration consequences of Batamula’s guilty plea.
Batamula is not required at the initial pleading stage to prove that he could have successfully pleaded to a single count or prevailed at trial. Powers, 446 F.2d at 24 (“We express no view as to [the petitioner’s] chances of ultimate success in proving his case. We simply direct that a forum be provided him in which to attempt proof of them.”). Taken as true, Batamula’s statements are sufficient to establish that he received constitutionally deficient assistance of counsel and that but for counsel’s error he would not have pleaded guilty to two crimes of moral turpitude. Cf. Reed, 719 F.3d at 374-75 (petitioner’s allegations of deficient plea advice and resulting prejudice, supported by an affidavit in which he makes “a specific factual claim based on personal knowledge,” are sufficient to warrant a hearing under § 2255). The district court thus did not proceed in conformity with § 2255 when it passed over the controverted issues of fact relating to Bata-mula’s own knowledge without granting him a hearing thereon, and the majority opinion ignores this court’s appellate duties in failing to correct the district court’s error.
III. Compounding Structural and Jurisdictional Errors Committed by the Majority Opinion
In an attempt to justify the district court’s dismissal of Batamula’s petition the en banc majority opinion applies the incorrect legal standard and mischaracterizes the factual record. The majority opinion states that “Batamula’s claim for relief turns on whether he affirmatively showed that counsel’s deficient advice regarding the deportation consequences of his guilty plea resulted in prejudice.” Op. at 240 (emphasis added). This is a patent mis-eharacterization' of the applicable standard that would place an erroneously heightened burden on habeas petitioners at the summary dismissal stage. A petitioner is not required to prove with evidence that he is entitled to relief in order to obtain an evidentiary hearing; he must only allege facts , that, if proven true, would entitle him to relief. See, e.g., Powers, 446 F.2d at 24; Arrastia v. United States, 455 F.2d 736, 740 (5th Cir.1972) (remanding for,an evi-dentiary hearing pursuant to § 2255 because “if [the defendant] can prove that which he has alleged ... then he ... must be granted relief’).
Then, finding that Batamula failed to meet this exaggerated and unprecedented burden, the majority opinion asserts that summary dismissal was proper because Batamula failed to show that his attorney’s deficient performance prejudiced him. Specifically, the majority opinion argues that “[b]ecause Batamula was already de-portable under § 1227(a)(l)(C)(i) before he pleaded guilty under the two-count information, it would not have been rational for him to proceed to trial in the hope of avoiding deportability under another subsection of § 1227” and he thus cannot demonstrate prejudice. Op. at 243. First, and contrary to the majority opinion’s contentions, Batamula does not make any assertions relating to his deportability under § 1227(a)(l)(C)(i). Rather, he alleges that he was attempting to adjust his immigration status at the time of his prosecution by having his marriage to a citizen recognized and that a conviction for two crimes of moral turpitude adversely affected him by rendering him “presumptively” or “manditor[ily]” deportable. Under these *248 circumstances, seeking to avoid an outcome that would destroy his chances of adjusting his status and result in near-certain deportation — even by rolling the dice and going to trial in hopes of a long-shot acquittal — would certainly be “rational.”
Furthermore, the record as it related to Batamula’s immigration status is far from conclusive. Although Scott Stalla, a special agent with the Bureau of Diplomatic Security, testified at the July 29, 2011 detention hearing that Batamula was “out of status currently,” and “ha[d] an I.C.E. detainer,” he repeatedly clarified that Ba-tamula was not in the country illegally, and he did not state that Batamula was subject to deportation. Josephine Anassi, the immigration attorney who was employed by Batamula’s wife to prepare the couple’s marriage-based residency applications, testified that even after Batamula’s application for residency had been denied three times, “there [is] still a chance that [Bata-mula] can still get an immigration visa.” And Magistrate Judge Nancy Johnson, who presided over the detention hearing, was not called upon to make, and did not make, a conclusive finding as to Batamu-la’s immigration status. The record thus does not demonstrate conclusively that “Batamula’s deportability under § 1227 was a fait accompli before he pleaded guilty under the two-count information,” Op. at 242, and it does not conclusively show that he cannot prove that his guilty plea worsened his chances of avoiding deportation. “The Government’s contention that his allegations are improbable and unbelievable cannot serve to deny [him] an opportunity to support them by evidence [at an evidentiary hearing].” Walker, 312 U.S. at 287, 61 S.Ct. 574. Because the files and records of the case were not conclusive, Batamula was entitled to an opportunity to be heard, “however convincing the [Government’s] ex parte showing.” Hayman, 342 U.S. at 220, 72 S.Ct. 263.
Whether a defendant suffered prejudice is a question of fact that requires determination by the district court. See United States v. Kayode, 777 F.3d 719, 729 n. 9 (5th Cir.2014) (discussing the “fact-intensive nature of the prejudice analysis”). Batamula’s specific factual allegations of prejudice are not fully refuted by the record; the majority opinion’s finding that he did not suffer prejudice is based on mere conjecture regarding his immigration status and his likelihood of deportation, not on the files and records of the case. Bata-mula has therefore adequately raised the issue of whether he was prejudiced as a result of his attorney’s failure to advise him of the immigration-related consequences of his plea. See Powers, 446 F.2d at 24. To settle that issue without allowing him to present evidence at an eviden-tiary hearing is to violate § 2255 and to flout the Supreme Court’s clear directives. See Hayman, 342 U.S. at 220, 72 S.Ct. 263 (“[T]he District Court did not proceed in conformity with Section 2255 when it made findings on controverted issues of fact ... without notice to respondent and without his being present.”); Townsend v. Sain, 372 U.S. 293, 312-13, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (“[A] federal evidentia-ry hearing is required unless the ... trier of fact has after a full hearing reliably found the relevant facts.”).[3]
Finally, even absent § 2255’s clear mandate, the majority opinion’s decision to *249 reach the Government’s fallback arguments that Batamula was deportable even in the absence of the conviction — which the district court itself never reached [4] — is inappropriate and inconsistent with the rules of orderly judicial procedure. In Pullman-Standard v. Swint, 456 U.S. 273, 291, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), the Supreme Court observed that it is “elementary” that “[w]hen an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings.” And while this court has recognized that we may affirm a grant of summary judgment on any appropriate ground that was raised to the district court, such ground must be one “upon which both parties had the opportunity to introduce evidence.” Conkling v. Turner, 18 F.3d 1285, 1296 n. 9 (5th Cir.1994) (emphasis added). Because of its erroneous view of the law, the district court did not make factual findings and did not afford Batamula any opportunity to introduce evidence to prove the facts alleged in his habeas claim, including those related to his immigration status. To affirm on the basis of his purported deportability therefore contravenes established appellate procedure.
Further, to the extent that it decides the question of Batamula’s deportability, the majority opinion approaches, if not exceeds, the limits of this court’s jurisdiction. In Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 492, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), the Supreme Court held that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 deprives federal courts of jurisdiction to decide whether the Attorney General can commence deportation proceedings, adjudicate cases, or execute deportation orders. Yet by holding that Ba-tamula cannot prove prejudice because he is certain to be deported, the majority opinion appears to have decided that the Attorney General can — and will — commence deportation proceedings against him. Viewed in this light, the majority opinion rests on a premise that this court lacks the authority to declaim. See 8 U.S.C. § 1252(g); AAADC, 525 U.S. at 492, 119 S.Ct. 936.
The en banc majority opinion affirms the judgment of the district court without expressly correcting that court’s serious legal error and without affording the petitioner the opportunity to present evidence in support of his allegation of prejudice. Instead of vacating the district court’s decision, which was based on a clear error of law and constituted an abuse of discretion, the majority finds facts at the appellate level from a record that is woefully inadequate and incomplete for that purpose. The majority defaults on its duty to correct errors of law committed by district courts and supersedes the function of the district court in conducting evidentiary hearings and making factual findings in the first instance. As a result, the majority unconscionably casts Batamula out in its error-filled decision based on rank speculation as to Batamula’s fate in any future immigration proceedings. Because this resolution is inconsistent with this court’s *250 precedent, the requirements of § 2255, and the clear directives of the Supreme Court, I must respectfully dissent.

. In Padilla, the Court noted that “when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.” 559 U.S. at 369-70, 130 S.Ct. 1473. As in that case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Batamula’s convictions. See 8 U.S.C. § 1227(a)(2)(A)(ii) ("Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is de-portable.”).

. Although the district court had not yet accepted Batamula’s guilty plea when it made its admonition, Batamula had previously signed a plea agreement and had affirmed that he "wish[ed] to plead guilty.”

. Although Townsend involved a § 2254 petition, the Supreme Court made clear in Kaufman v. United States, 394 U.S. 217, 227, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), that the same standard applied to both state and federal prisoners. While AEDPA amended the fact-finding procedures for petitions under § 2254, it did not amend those for petitions under § 2255.

. The district court considered only the Rule 11 colloquy in holding that Batamula "cannot” establish prejudice as a matter of law, asserting that "even if Batamula's attorney was deficient in failing to inform Batamula of the immigration consequences of his guilty plea, Batamula has not shown that such a deficiency prejudiced him because before accepting his guilty plea the court informed him that he would likely be deported after he served his sentence." It is factually incorrect to say that the district court here somehow implicitly applied a totality of the circumstances test.