United States Court of Appeals,

Fifth Circuit.

No. 92-4829.

Patrick O. DeVILLE and Jimmy A. Vidrine, Plaintiffs-Appellants,

v.

John P. WHITLEY, Warden, Louisiana State Penitentiary,
Defendants-Appellees.

May 27, 1994.

Appeals from the United States District Court for the Western
District of Louisiana.

Before WOOD, Jr.,[1] SMITH and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Appellants, Patrick DeVille and Jimmy Vidrine, appeal the
dismissal of their habeas petition.  Appellants contend that their
pleas of guilt to second degree murder are invalid because (1) they
lacked the mental capacity to plead;  (2) they were not informed of
the elements of second degree murder;  (3) their attorneys coerced
them into pleading;  and (4) they were denied the effective
assistance of counsel.  After a careful review of these
contentions, we affirm the district court's dismissal.

BACKGROUND

On September 8, 1980, Homer Gautreaux was robbed and bound,
forced to swallow pills and a cleansing agent, and later died of
asphyxiation.  Two days later, DeVille and Vidrine were arrested
for the first degree murder and armed robbery of Gautreaux.

_____

[1]Circuit Judge of the Seventh Circuit, sitting by
designation.

1

At arraignment, Appellants pleaded "not guilty and not guilty by reason of insanity." The state trial court appointed a sanity commission composed of two physicians to examine Appellants, and Appellants appeared before the court for sanity hearings. The court found Appellants sane, able to understand the charges against them and capable of assisting counsel in their defenses. However, because a discrepancy existed between the two physicians' reports, the court ordered a second sanity commission to examine both Appellants. After second examinations and hearings, the court again ruled that Appellants were competent to stand trial and assist counsel.

On May 26, 1981, the first day scheduled for trial, the state offered Appellants a plea bargain. Appellants pled guilty to second degree murder, and the state dismissed the first degree murder and armed robbery charges. The court accepted the plea agreement, and Appellants were sentenced to life imprisonment at hard labor without the benefit of probation, parole or suspension of sentence.

With state collateral remedies exhausted, Appellants filed this petition for federal habeas relief. A federal magistrate judge reviewed the pleadings, briefs, and state habeas court records and concluded that an evidentiary hearing was not necessary. The magistrate judge recommended denial of the petition finding that Appellants' guilty pleas were knowing and voluntary and that Appellants were not prejudiced by counsel's performance. The district court adopted the magistrate judge's recommendations

2

and dismissed the habeas petition. We granted Appellants' certificate of probable cause and this appeal followed.

DISCUSSION

I. *Standard of Review*

When reviewing the habeas proceedings of petitioners in state custody, we must accord a presumption of correctness to state court findings of facts. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 455 U.S. 591, 591-92, 102 S.Ct. 1303, 1304, 71 L.Ed.2d 480 (1982). We review the district court's finding for clear error, but decide any issues of law de novo. *Barnard v. Collins,* 958 F.2d 634, 636 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 990, 122 L.Ed.2d 142 (1993).

II. *Mental Competency*

Appellants claim that they were not mentally competent to plead guilty and that the trial court erred by not inquiring into their mental capacity before they entered their pleas. The conviction of a mentally incompetent defendant violates the Due Process Clause. *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). When a court has reason to believe that a defendant may be incompetent, it must conduct a competency hearing. *Godinez v. Moran,* --- U.S. ----, ---- n. 13, 113 S.Ct. 2680, 2688 n. 13, 125 L.Ed.2d 321 (1993). The competency standard in guilty plea cases is identical to the competency standard to stand trial. *Id.* at ----, 113 S.Ct. at 2686. The trial court must determine whether the defendant has sufficient present ability to consult with his counsel and whether he has a rational and factual

3

understanding of the proceedings against him. *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 788, 4 L.Ed.2d 824 (1960).

Appellants have failed to meet their heavy burden of proving actual mental incompetency at the time of their pleas. *See Flugence v. Butler,* 848 F.2d 77, 79 (5th Cir.1988). A factual finding of competency by the state court is presumed to be correct. *Id.* Four physicians examined each Appellant and opined that Appellants were competent to stand trial. The state court held extensive sanity hearings. Appellants have provided no new evidence of incompetency that would entitle them to a federal evidentiary hearing. *See Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes,* --- U.S. ----, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). After a careful review of the record, we cannot say that the state court's assessment of competency was erroneous.

Nor do we find that the trial court should have inquired into Appellants' competency during the plea colloquy. *Godinez* requires the trial court to make an inquiry only when there is doubt about competency. --- U.S. at ---- n. 13, 113 S.Ct. at 2688 n. 13. The court held a competency hearing for DeVille four months before his plea and for Vidrine two months before his plea. After these hearings, the trial court received no objective information that would reasonably put it on notice that Appellants may not have been competent.

III. *Knowing and Voluntary Plea*

After the court has determined that the defendant is

4

competent to stand trial or enter his plea, the court must satisfy itself that the plea is knowing and voluntary. *Parke v. Raley,* --- U.S. ----, ----, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea and any concomitant agreement will be upheld on federal review." *Frank v. Blackburn,* 646 F.2d 873, 882 (5th Cir.1980), *modified on other grounds,* 646 F.2d 902 (5th Cir.), *cert. denied,* 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981).

A. Elements

Appellants first claim that their pleas were not knowing and voluntary because they were not informed of the specific intent element of second degree murder. Appellants rely heavily on *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

In *Henderson,* the Supreme Court held that a guilty plea to second degree murder was involuntary where it was established as a fact that the defendant had not been informed and was not aware that under New York law intent to kill was an essential element of the offense to which he pled. *Id.* at 646-47, 96 S.Ct. at 2258. The Court stressed that the defendant's plea could not be voluntary when no one had explained to the defendant that his plea was an admission to having the specific intent to kill. *Id.* at 646, 96 S.Ct. at 2258.

The *Henderson* Court did not purport, however, to lay down an

5

absolute requirement that the technical elements of an offense be recited to a defendant. A plea will be upheld if it is shown by the record, or the evidence adduced at an evidentiary hearing, that a defendant understood the charge and its consequences when he pled guilty. *Hobbs v. Blackburn,* 752 F.2d 1079, 1081 (5th Cir.), *cert. denied,* 474 U.S. 838, 106 S.Ct. 117, 88 L.Ed.2d 95 (1985).

In this case, the record shows that Appellants understood the charge to which they pled. In contrast to the statute in *Henderson,* specific intent is not an essential element of second degree murder in Louisiana. Louisiana Revised Statute § 14:30.1 provides that second degree murder may be a specific intent or a felony murder crime:

Second degree murder is the killing of a human being:

(1) [specific intent provision]; or

(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.

La.Rev.Stat.Ann. § 14:30.1 (West 1986). The state trial court did not read the statute or explain in technical terms each element of second degree murder,[2] but it fully apprised the defendants of the acts necessary to comprise the crime of felony murder under the

---

[2]Federal Criminal Procedure Rule 11 requires that a federal judge address a defendant in open court, informing the defendant of the nature of the charges. A state court need not comply with the formal procedures set forth in Rule 11 as long as the plea comports with the requirements of due process. *See Frank,* 646 F.2d at 882.

6

second degree murder statute.[3]  The following colloquy took place between the court and DeVille:

> Q [The Court].  Mr. Gautreaux died on or about September 7, 1980.  Now, in order for me to accept a guilty plea on a second degree murder, I'm going to have to question you about the incidents of Mr. Gautreaux's death.  I've read some of the statements, Mr. DeVille, and I understand that you and a companion went to Mr. Gautreaux's house on the night of his death.  Is that correct?
>
> A [The Defendant].  Yes, sir.
>
> Q.  And that you and this companion went there with the intention of breaking in and stealing.  Is that correct?
>
> A.  Yes, sir.
>
> Q.  One of you entered through a window and the other was let in through a door.  Is that correct?
>
> A.  Yes, sir.
>
> Q.  And one of you had a gun.  Is that right?
>
> A.  Yes, sir.
>
> Q.  And Mr. Gautreaux was awakened in his bed and he was tied up.  Is that correct?
>
> A.  Yes, sir.
>
> Q.  And Mr. Gautreaux, while tied up, was forced to eat pills and drink Pine Oil which resulted in his death.  Is that correct?
>
> A.  Yes, sir.
>
> Q.  And that $50.00 was found in the apartment and was stolen.  Is that correct?

---

[3]In this respect, the district court erred in finding that the state trial judge failed to inform Appellants of all the elements of second degree murder.  The district court nonetheless found that Appellants had knowledge of the elements of second degree murder.  Although we do not follow the district court's reasoning, we may affirm on any proper ground. *Bickford v. International Speedway Corp.,* 654 F.2d 1028, 1031 (5th Cir.1981).

A. Yes, sir.[4]

The court gave Appellants notice that the questions it was asking were necessary for an acceptance of a plea to second degree murder. The questions fully encompassed the elements of felony murder. Unlike *Henderson,* no hidden element was admitted to by Appellants. The only element Appellants suggest they would dispute is specific intent to kill, which is not an essential element to the crime of second degree murder in Louisiana.

The record demonstrates that Appellants had sufficient notice of the charge to which they pled. Appellants knowingly admitted to each element of felony murder under the Louisiana second degree murder statute. Thus, Appellants have failed to meet their burden of proving that they lacked adequate notice of the charge of second degree murder. *See Bonvillain v. Blackburn,* 780 F.2d 1248, 1251 (5th Cir.) (habeas petitioner has burden of proving that he is entitled to relief), *cert. denied,* 476 U.S. 1143, 106 S.Ct. 2253, 90 L.Ed.2d 699 (1986).

B. Coercion

Appellants next claim that their attorneys coerced their guilty pleas. Appellants first argue that their counsel misrepresented the meaning of life imprisonment by suggesting to Appellants that they would not serve a full term. A mere understanding by Appellants, however, that they would receive a lesser sentence in exchange for a guilty plea will not abrogate

---

[4]A similar colloquy took place between Vidrine and the court.

that plea should a heavier sentence actually be imposed. *Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir.1989). To prevail on their claim, Appellants must prove that an actual promise was made by showing (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of any eyewitness to the promise. *Smith v. McCotter,* 786 F.2d 697, 701 (5th Cir.1986).

The state habeas court held an evidentiary hearing on this exact issue. After hearing all the testimony, the court rejected Appellants' claim:

> It is ludicrous and incredible that a man, an attorney like Mr. Launey [Vidrine's attorney] or Mr. Mitchell [DeVille's attorney] would tell these people that they would be out in five or ten years, when it's fundamental that a person convicted of second degree murder will receive a life sentence without the benefit of parole, probation or suspension. Now, that doesn't mean that there might have been some type of talk that years later they could apply for some commutation of sentence or some leniency. That's always possible. But the distinct possibility of getting parole is absolutely unbelievable. To believe what these people would be saying, would be to brand Mr. Launey and Mr. Mitchell, competent lawyers, to be absolutely dishonest, incompetent and not fit to be lawyers serving the public.

The state court chose to disbelieve the testimony of Appellants and their witnesses and believe the testifying attorneys that no promise regarding sentencing was made. We have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by [us]." *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983). Appellants have failed to overcome the presumption of correctness attendant to state court findings and prove that an actual promise was made.

Appellants also argue that their pleas were coerced, and thus involuntary, because their attorneys threatened to withdraw from the case if they did not plead guilty. At the plea colloquy, the court asked Appellants whether they were being forced, pressured or induced in any way to enter their pleas. Both Appellants responded negatively. Although their attestations to voluntariness are not an absolute bar to raising this claim, Appellants face a heavy burden in proving that they are entitled to relief because such testimony in open court carries a strong presumption of verity. *See Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977).

Both attorneys testified at the state habeas evidentiary hearing that they did not threaten to withdraw from representation if their clients did not plea guilty. Again, the state habeas court chose to believe this testimony, finding that Appellants' attorneys vigorously defended their clients and that they were prepared to go to trial on the day that Appellants pled guilty. We will not second-guess the state court's credibility determinations. We conclude that Appellants have failed to meet their burden of showing that their pleas were involuntary.

IV. *Ineffective Assistance of Counsel*

Finally, Appellants argue ineffective assistance of counsel. Three of their claims overlap with their assertions that their pleas were not knowing and voluntary. Appellants argue that their attorneys misrepresented the meaning of life imprisonment, failed to explain the elements of second degree murder and threatened to

10

withdraw from the case if Appellants did not plead guilty. Appellants also argue that their attorneys failed to explain the significance of a motion to suppress.[5]

The standard for determining the effectiveness of counsel during a guilty plea proceeding is the two-prong test set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). A defendant must show that counsel's representation fell below an objective standard of reasonableness, and that there is " "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). To meet the prejudice prong, the defendants must affirmatively prove, and not merely allege, prejudice. *Bonvillain,* 780 F.2d at 1253. Thus, "[e]ven where counsel has rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary. In such a case there is "no actual and substantial disadvantage' to the defense." *United States v. Diaz,* 733 F.2d 371, 376 (5th Cir.1984) (quoting *Diaz v. Martin,* 718 F.2d 1372, 1379 (5th Cir.1983)).

Appellants have failed to satisfy their burden of proving that

---

[5]Appellants had moved to suppress statements that they had made while in custody. The Louisiana Supreme Court stayed their trial until the court held an evidentiary hearing on the suppression motion. *State v. Vidrine,* 401 So.2d 967 (La.1981). When Appellants pled guilty, they waived the right to this suppression hearing.

11

they were prejudiced by their first three claims of deficient performance. Our previous discussion concluding that Appellants' pleas were voluntary defeats these claims of ineffective assistance of counsel.

As for the claim regarding the motion to suppress, Appellants have not shown that their counsel's performance was deficient. Defense counsel for both Appellants testified at the state habeas evidentiary hearing that they explained the significance of the motion to suppress to Appellants. Appellants lack of understanding of the significance of the motion to suppress does not make counsel's attempt to explain it deficient.

Even assuming that Appellants' counsel were in some respect deficient in their explanation of the motion to suppress, the state trial court asked both petitioners whether they understood that they were entitled to a suppression hearing and whether they were willing to waive that hearing. Both Appellants responded that they understood and were willing to waive the right to the hearing. The court's admonishment cured any deficiency in counsel's performance and made the error harmless. *See Bonvillain,* 780 F.2d at 1253.

## CONCLUSION

For the foregoing reasons the denial of Appellants' writ of habeas is

AFFIRMED.