# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-20630

United States Court of Appeals
Fifth Circuit

**FILED**

May 3, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

INNOCENT RUTAHAGARA BATAMULA,

> Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and JOLLY, DAVIS, JONES, SMITH, DENNIS, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK, HAYNES, GRAVES, HIGGINSON, and COSTA, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge, joined by STEWART, Chief Judge, and JOLLY, DAVIS, JONES, SMITH, PRADO*, OWEN, ELROD, SOUTHWICK, HAYNES*, HIGGINSON, and COSTA, Circuit Judges:

The court voted to rehear this case en banc to consider whether Innocent Rutahagara Batamula has made a sufficient showing of prejudice in his ineffective assistance of counsel claim to survive summary judgment. We hold

---

* Concurring in the judgment only.

No. 12-20630

that Batamula failed to allege a non-frivolous prejudice claim and accordingly we AFFIRM the district court.

## I.

Batamula, a Tanzanian citizen, entered the United States on a student visa in 2001 and remained in the country after his visa expired. He married a United States citizen, applied for a change in his immigration status, and, in 2008, applied for and obtained a United States passport for his biological son, B.B.,[1] a citizen and then-resident of Tanzania. To secure the passport, Batamula used his son's photograph along with the name and birth date of a different Tanzanian child, Z.M., who was a United States citizen. Approximately three years later, Z.M's parents applied for a passport for their son only to discover that a passport had already been issued, displaying the photograph of someone else's child. When questioned by federal agents, Batamula denied knowing the boy pictured in the fraudulent passport.

Batamula was indicted on a single count of making a false statement to a United States agent under 18 U.S.C. § 1001. By superseding criminal information, he was charged with making a false statement to a federal agent and an additional count of making a false statement in an application for a United States passport in violation of 18 U.S.C. § 1542. Batamula pleaded guilty pursuant to a written plea agreement. During the plea proceeding, Batamula informed the court that he had spoken with his attorney about the charges approximately ten times and that he was "fully satisfied" with his attorney's advice and counsel. Before accepting the plea, the district court judge admonished both Batamula and a second defendant present at the proceedings, stating: "The offenses that you're pleading guilty to are felonies.

---

[1] To protect the identity of the minor children involved, we refer to them by their first and last initials.

No. 12-20630

That means that each of you will likely be deported after you serve your sentence." The court found Batamula's guilty plea knowing and voluntary, accepted his guilty plea as to both counts, and sentenced him to time served, one year of supervised release, and a $2000 fine.

Batamula then moved to set aside his conviction and sentence pursuant to 28 U.S.C. § 2255, claiming that his attorney provided ineffective counsel under *Padilla v. Kentucky*, 559 U.S. 356 (2010), by failing to advise him that pleading guilty to both charges could result in his deportation. In support of his § 2255 motion, Batamula averred in a sworn affidavit that if his attorney had advised him of the mandatory deportation consequences of pleading guilty, then he would have refused to "make the plea," would have pleaded not guilty, and would have insisted on going to trial "as that would have been [his] only alternative to avoid deportation." Batamula attached an affidavit from his trial counsel, which stated that the attorney did not advise him that pleading guilty to both charges would make him mandatorily deportable. He also submitted an affidavit from his immigration attorney, which explained that his guilty plea rendered him presumptively deportable under 8 U.S.C. § 1227(a)(2)(A)(ii) because his convictions are considered crimes of moral turpitude.

The district court granted the Government's motion for summary judgment and denied Batamula's § 2255 motion without an evidentiary hearing, finding that Batamula had "shown no right to relief."[2] The court reasoned that "even if Batamula's attorney was deficient in failing to inform [him] of the immigration consequences of his guilty plea," Batamula failed to show the deficiency prejudiced him. The court concluded that Batamula did know about the deportation consequences because "before accepting his guilty

---

[2] *See United States v. Guerra*, 588 F.2d 519, 521 (5th Cir. 1979) (explaining that district courts may dismiss § 2255 petitions without a hearing when the petitioner presents a "patently frivolous claim[]").

3

No. 12-20630

plea the court informed him that he would likely be deported after he served his sentence." This court granted Batamula a COA, and in a per curiam opinion reversed the district court on the narrow question of whether a judicial warning of likely deportation alone forecloses a defendant's claim of prejudice. Thereafter, we granted en banc rehearing.

## II.

We review de novo a district court's legal conclusions in denying a motion under 28 U.S.C. § 2255. *United States v. Ghali*, 699 F.3d 845, 846 (5th Cir. 2012). We review factual findings for clear error. *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008). "[W]e may affirm for any reason supported by the record, even if not relied on by the district court." *United States v. Gonzalez*, 592 F.3d 675, 681 (5th Cir. 2009).

Batamula's claim for relief turns on whether he affirmatively showed that counsel's deficient advice regarding the deportation consequences of his guilty plea resulted in prejudice.[3] He alleges that: (1) instead of insisting on trial on the original one-count indictment, he pleaded guilty to the two charges; (2) his "plea made his deportation presumptively mandatory"; (3) his "lawyer did not advise him that [his] guilty plea . . . would render his deportation presumptively mandatory"; and (4) had his lawyer "informed him about the immigration consequences of his plea, [he] would have plead[ed] not guilty and insisted on going to trial or sought to eliminate one count" in the plea deal. Batamula's allegations are supported by the affidavits he filed with his petition.

---

[3] On appeal, the parties focus their arguments on whether Batamula can establish prejudice as a result of his counsel's performance. Accordingly, we do not address whether counsel provided deficient representation, and confine our analysis to the second *Strickland* prong—whether Batamula has made a sufficient showing of prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

No. 12-20630

To avoid summary dismissal and obtain a hearing, however, Batamula had to allege a non-frivolous prejudice claim. *See Guerra*, 588 F.2d at 521. Establishing prejudice under *Strickland*, requires Batamula to show a reasonable probability that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In other words, Batamula has to demonstrate that going to trial under the one-count indictment would have given him a reasonable chance of obtaining a more favorable result. The court's prediction about whether the defendant had a reasonable chance of obtaining a more favorable result "should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 60 (quoting *Strickland*, 466 U.S. at 695); *see also Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) ("[Defendant] cannot [show prejudice] merely by telling us now that she would have gone to trial then if she had gotten different advice. The test is objective, not subjective[.]").

We explained, in *United States v. Kayode*, that "[i]n assessing prejudice, we consider the totality of the circumstances." 777 F.3d 719, 725 (5th Cir. 2014).[4] Unlike the defendant in *Kayode*, Batamula did "aver that he would have gone to trial had he known of the immigration consequences of his plea." *Id.* at 725–26. On the other hand, Batamula did not attempt to show that he was likely to succeed at trial. Indeed, in response to the Government's argument that his chances at trial were slim, Batamula claimed that

---

[4] In *Kayode*, we also mentioned a non-exhaustive list of potentially relevant factors, including: (1) the defendant's "evidence to support his assertion" that he would have gone to trial had he known the likely deportation consequences of his plea; (2) "his likelihood of success at trial"; (3) "the risks [he] would have faced at trial"; (4) his "representations about his desire to retract his plea"; (5) "his connections to the United States"; and (6) "the district court's admonishments." *Id.* Although *Kayode* was not published until after this case was fully briefed on appeal, it was established at the time Batamula filed his habeas petition that the prejudice inquiry "requires [a] probing and fact-specific analysis." *Sears v. Upton*, 561 U.S. 945, 955 (2010). Batamula cannot be excused for failing to adduce available evidence that was relevant to the prejudice analysis.

questioning the likelihood of success at trial was "beyond the prejudice prong of *Strickland.*" And on this point, the record shows that at least two federal agents could testify at trial that Batamula lied to them by claiming not to recognize a picture of his own son. Batamula does not address the risks that he would have faced at trial, while the Government points to evidence that going to trial would have increased the length of his sentence. Batamula did not attempt to show that he had significant connections with the United States, and the record suggests that he does not have the depth of connection that we found favored the defendant in *Kayode*. Batamula did not move to withdraw his plea, and thus never mentioned that factor in his habeas petition. Most importantly, the district court admonished Batamula and another defendant that they were pleading guilty to felonies, and thus "each of [them] [would] likely be deported after you serve your sentence." While the district court did not examine Batamula as thoroughly on the deportation issue as the district court did in *Kayode*, *cf.* 777 F.3d at 729, the district court's warning to Batamula that deportation was "likely" was stronger than the court's admonishment in *Kayode* that pleading guilty "may lead to your deportation," *id.*[5] *See McCarthy v. United States*, 394 U.S. 459, 465 (1969) ("[T]he more meticulously [Rule 11] is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous

---

[5] Here, the district court's analysis mirrors the analysis cited by *Kayode* as an example of a fact-intensive inquiry. 777 F.3d at 729 n.9 (citing *DeVille v. Whitley*, 21 F.3d 654, 660 (5th Cir. 1994)). In *DeVille*, a panel of this court reasoned as follows:

> Even assuming that Appellants' counsel were in some respect deficient in their explanation of the motion to suppress, the state trial court asked both petitioners whether they understood that they were entitled to a suppression hearing and whether they were willing to waive that hearing. Both Appellants responded that they understood and were willing to waive the right to the hearing. The court's admonishment cured any deficiency in counsel's performance and made the error harmless.

21 F.3d at 660.

post-conviction attacks on the constitutional validity of guilty pleas."); *Kayode*, 777 F.3d at 729.

Comparing this case to *Kayode*, Batamula's prejudice showing is the weaker of the two. Before the district court, Batamula—who has the burden to establish prejudice—made allegations and adduced evidence suggesting only that he would have proceeded to trial had he known the deportation consequences of his conviction. Batamula failed to adduce any other evidence relevant to the prejudice determination.  The district court did not err by concluding, under a totality of the circumstances test, that "Batamula ha[d] not shown that [his attorney's] deficiency prejudiced him." The district court was not required to cast about in the record looking for allegations and evidence concerning other potential factors mentioned in *Kayode*;[6] the court rightly held Batamula to his burden.

Stepping back and addressing the totality of the circumstances shows that Batamula failed to allege even a rational explanation for his desire to proceed to trial. Batamula's argument is that, with competent advice from counsel, he "could have faced trial on a single count and avoided an automatic deportation." This argument is based on the fact that, under 8 U.S.C. § 1227(a)(2)(A), an alien who has been in the country for more than five years is deportable only if he commits two separate crimes involving moral turpitude.[7]

---

[6] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[7] Section 1227(a)(2)(A)(i) provides that "[a]ny alien who–(I) is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable." Section 1227(a)(2)(A)(ii) provides that "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct . . . is deportable."

No. 12-20630

Batamula's theory of prejudice relies on two dubious assertions: first, that he was not deportable under § 1227 at the time he pleaded guilty; and second, that if he had refused to plead guilty, the Government would have gone to trial under the one-count indictment without adding additional charges. The Government argues that Batamula failed to show prejudice because he was already deportable for having overstayed his visa under § 1227(a)(1)(C)(i). The record and controlling law unequivocally support the Government's position. Because the undisputed record evidence shows that Batamula's first assertion is false, we do not address the second.

Section 1227(a)(1)(C)(i) provides that "[a]ny alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted . . . is deportable." Batamula is deportable under this subsection if he "was admitted as a nonimmigrant for a temporary period, . . . the period has elapsed[,] and . . . [he] has not departed." *Equan v. INS*, 844 F.2d 276, 278 (5th Cir. 1988). Undisputed record evidence shows that Batamula entered the U.S. on a non-immigrant F-1 student visa, the visa expired, and Batamula did not depart the country. Accordingly, Batamula's deportability under § 1227 was a *fait accompli* before he pleaded guilty under the two-count information. Proceeding to trial under the one-count indictment would not change his deportable status. Under these circumstances, Batamula has failed to put forward a rational explanation of his desire to proceed to trial. *See Padilla*, 559 U.S. at 372.

Batamula contends that the Government's "claim that [he] was in a class of deportable alien[s] under 8 U.S.C. § 1227(a)(1)(C)(i) ignores his marriage, or infers too much from a limited record concerning a petition for alien relative (I-130)." This is mistaken. First, even assuming—contrary to the undisputed record evidence—that United States Citizenship and Immigration Services ("USCIS") was not revoking Batamula's approved I-130 petition, "nothing in

the Immigration and Nationality Act immunizes a deportable alien from deportation when a[n] [I-130] visa petition filed on his behalf is approved." *Perales v. Casillas*, 903 F.2d 1043, 1048 (5th Cir. 1990).[8] Accordingly, whether or not Batamula's marriage is bona fide,[9] his marriage and approved I-130 petition do not alter his deportable status under § 1227(a)(1)(C)(i). Second, Batamula fails to even allege, much less to adduce any evidence, that he has submitted an I-485 petition for adjustment of non-immigrant status.[10] Thus, this court has no basis to infer that Batamula's marriage and approved I-130 petition have any effect on his deportable status under § 1227(a)(1)(C)(i). Because Batamula was already deportable under § 1227(a)(1)(C)(i) *before* he pleaded guilty under the two-count information, it would not have been rational for him to proceed to trial in the hopes of avoiding deportability under another subsection of § 1227. Batamula's failure to put forth even a rational explanation for his desire to proceed to trial means that he did not carry his burden to show prejudice.

---

[8] *Accord Vasquez de Alcantar v. Holder*, 645 F.3d 1097, 1104–05 (9th Cir. 2011) (quoting *Perales* for same proposition); *United States v. Atandi*, 376 F.3d 1186, 1192 (10th Cir. 2004) (stating that "courts have consistently held that an alien is not authorized to be in the United States simply because an I-130 visa petition had been filed on his or her behalf and/or approved by the government," and quoting *Perales* for same proposition); *Der-Rong Chour v. INS*, 578 F.2d 464, 468 (2d Cir. 1978) (holding that "the approval of the [petitioner's] I-130 petition [did not] permit him to remain in the United States"); *see also United States v. Elrawy*, 448 F.3d 309, 314 (5th Cir. 2006) (explaining that, even after I-130 petition is approved, "an alien who has acquired unlawful or illegal status . . . by overstaying a visa . . . cannot relinquish that illegal status until his [I-485] application for adjustment of status is approved").

[9] The record evidence suggests that the marriage is not bona fide. Two prior applications for residency had been denied for failure to meet the burden of proof of marriage, and Batamula's third application was in the process of being denied for marriage fraud.

[10] *See generally* National Immigration Project of the National Lawyers Guild, 1 Immigration Law & Defense § 4:145, Westlaw (database updated Feb. 2015) (explaining that alien files application for adjustment of status after preliminary procedures, such as getting I-130 petition approved, have been completed); *id.* § 4:149 (discussing Form I-485 for adjustment of status).

No. 12-20630

## III.

Batamula failed to allege facts or adduce evidence showing that the outcome of the plea process would have been different with competent advice. The record conclusively established that he was deportable before his guilty plea, and he remained so afterward. Thus, his prejudice claim is frivolous. The district court was correct to summarily dismiss the claim without holding an evidentiary hearing. We AFFIRM.

No. 12-20630

JAMES L. DENNIS, Circuit Judge, with whom GRAVES, Circuit Judge, joins, dissenting:

The en banc majority's triple derelictions of its appellate court duties in a single opinion may be a record-breaker. Accordingly, I respectfully dissent.

First, the majority opinion fails to correct the district court's threshold error of law—its holding that a judicial admonition of possible deportation during a guilty-plea colloquy automatically erases any prejudice caused a defendant by the deficient performance of his counsel. This holding was reversible error for the reasons assigned by the panel opinion. *See United States v. Batamula*, 788 F.3d 166 (5th Cir. 2015). The majority opinion, however, leaves the error unaddressed and uncorrected by passing over it in silence as it attempts to uphold the district court's judgment on other grounds. In doing so, the majority opinion tacitly encourages other judges to repeat the same error. If the error becomes widely imitated by other district courts, non-citizens' ineffective assistance of counsel claims established by *Padilla v. Kentucky*, 559 U.S. 356 (2010), will be severely undermined in our circuit. The majority opinion's failure to correct the threshold error by the district court is thus a serious and harmful dereliction of the en banc court's appellate responsibility.

Second, the majority opinion errs again by tacitly approving the district court's refusal to grant a federal prisoner an evidentiary hearing on his well pleaded motion for habeas corpus under 28 U.S.C. § 2255, although the files and records of the case do not conclusively show that he is entitled to no relief. This court has explained that "where petitioner's allegations, if proven would entitle him to relief, he is entitled to an evidentiary hearing and an opportunity to prove the truth of the matters asserted" unless his claims are "fully refuted by the record and files." *Powers v. United States*, 446 F.2d 22, 24 (5th Cir.

No. 12-20630

1971). The district court's refusal was therefore an abuse of discretion, and the majority opinion errs in failing to correct it.

Third, in light of the district court's error and abuse of discretion, the majority opinion should have vacated the district court's judgment and remanded the case for further proceedings based on the applicable legal principles. Instead, the majority opinion exponentially compounds its own mistakes by improperly acting as a fact-finding tribunal; by finding facts not ruled upon or subjected to adversarial testing below; and by testing the boundaries of its jurisdiction in acting as an immigration court to determine that Batamula is irrevocably deportable and therefore incapable of suffering any prejudice because of his ineffectively counseled guilty plea.

I.     Substantive Error of Law

In response to Batamula's 28 U.S.C. § 2255 motion, the district court without granting a hearing or taking evidence, reversibly erred by holding as a matter of law that the guilty plea judge's generic, unilateral statement during the Federal Rule of Criminal Procedure 11 colloquy that Batamula would "likely be deported" after serving his sentence, by itself, cured any prejudice Batamula may have suffered as a result of his attorney's failure to properly advise him that his guilty plea to two offenses involving moral turpitude would make him mandatorily deportable. In *Padilla*, the Supreme Court held that the Sixth Amendment requires an attorney for a noncitizen criminal defendant to provide advice about the risk of deportation arising from a guilty plea.[1]  559 U.S. at 369-70. The Court noted that "the negotiation of a

---

[1] In *Padilla,* the Court noted that "when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." 359 U.S. at 369-70. As in that case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Batamula's convictions. *See* 8 U.S.C. § 1227(a)(2)(A)(ii) ("Any alien who at any time after admission is convicted of two or more crimes involving

12

plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel" and recognized that "[t]he severity of deportation—'the equivalent of banishment or exile'—only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Id.* at 373-74 (quoting *Delgadillo v. Carmichael*, 332 U.S. 388, 390-391 (1947)).  If imitated by other habeas courts, the rule imposed by the district court—and left uncorrected by the en banc majority opinion—would render *Padilla*'s holding null and void by permitting sentencing judges to categorically erase any claim of prejudice and eliminate any chance of relief by simply including a rote "likely deportation" advisory during every guilty plea colloquy.

The erroneous assumption that a generic judicial statement, after the plea has already been entered,[2] that deportation is "likely," by itself, cures any prejudice caused by counsel's deficient performance during plea negotiations also ignores the realities of plea negotiations and plea colloquies—primarily the facts that a defendant chooses to plead guilty *before* the plea hearing and is not likely to change his mind during the hearing.  As the *Padilla* court recognized, "[c]ounsel who possess the most rudimentary understanding of the deportation consequences of a particular criminal offense may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation." *Padilla*, 559 U.S. at 373. In his habeas petition and supporting affidavit, Batamula alleged that if his

---

moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.").

[2] Although the district court had not yet accepted Batamula's guilty plea when it made its admonition, Batamula had previously signed a plea agreement and had affirmed that he "wish[ed] to plead guilty."

"plea attorney had correctly informed him about the immigration consequences of his plea, [he] would have plead[ed] not guilty and insisted on going to trial or sought to eliminate one count" from the charge.  It is undisputed that if Batamula had successfully eliminated one count, his plea would not have rendered him mandatorily deportable.  *See* 8 U.S.C. § 1227(a)(2)(A)(ii).  By ignoring this very real form of prejudice, the categorical rule applied by the district court flouts *Padilla*'s directive and defeats its impact.

In *Missouri v. Frye*, 132 S. Ct. 1399, 1406 (2012), the Court made clear, as it did in *Padilla*, that it has firmly "rejected the argument . . . that a knowing and voluntary plea supersedes errors by defense counsel."  *See also Lafler v. Cooper*, 132 S. Ct. 1376, 1390 (2012) ("An inquiry into whether the rejection of a plea is knowing and voluntary . . . is not the correct means by which to address a claim of ineffective assistance of counsel.").  And the Court has long distinguished the unique and critical obligations of defense counsel during the plea bargaining process from the far more limited role of a district court to ensure a minimally valid guilty plea.  *See Frye,* 132 S.Ct. at 1406; *Lafler,* 132 S.Ct. at 1390; *Padilla,* 559 U.S. at 364-65.  As the panel opinion in this case aptly explained, the straightforward logic of these cases leads to the conclusion that a sentencing judge's generic advisory of "likely" deportation does not categorically erase prejudice stemming from the ineffective assistance of counsel in negotiating and advising on the plea.  By grounding its decision that Batamula did not suffer prejudice as a result of his counsel's errors in his immigration status, the en banc majority opinion may have implicitly rejected the categorical approach taken by the district court.  But by failing to explicitly correct the district court's error and adopt the panel's holding that "a judge's admonition at the plea colloquy that deportation is 'likely' does not automatically 'wipe clean' any prejudice caused by counsel's failure to advise

his client of the immigration consequences of the guilty plea," *Batamula*, 788 F.3d at 173, the majority opinion has left the door open for other district courts to repeat the same mistake and, in doing so, has imperiled the Sixth Amendment rights of noncitizen defendants in our circuit.

II.    Failure to Grant Evidentiary Hearing

Under 28 U.S.C. § 2255, when a federal prisoner alleges facts that, if proven, would entitle him to relief from an unconstitutional sentence, the district court is required to grant a hearing to "determine the issue and make findings of fact and conclusions of law with respect thereto" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In *Machibroda v. United States*, 368 U.S. 487, 494-95 (1962), the Supreme Court explained that the relevant "files and records" relate only to proceedings before the district court, not to "occurrences outside the courtroom" or to circumstances that are not "of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection." The district court, in determining whether summary dismissal is appropriate, is not permitted to make findings on controverted issues of fact without a hearing, *United States v. Hayman*, 342 U.S. 205, 219-20 (1952), or to judge ex parte the plausibility of a petitioner's allegations, *Walker v. Johnston*, 312 U.S. 275, 287 (1941). As this court explained in *Powers*:

> Dismissal of a complaint without a hearing is justified when assuming the factual allegations pleaded by the prisoner to be true (or finding them fully refuted by the record and files) it conclusively appears that he would not be entitled to relief. Conversely stated, where petitioner's allegations, if proven would

entitle him to relief, he is entitled to an evidentiary hearing and
an opportunity to prove the truth of the matters asserted.

446 F.2d at 24 (internal citation omitted). In other words, where a petitioner makes specific factual claims that are "not speculative, conclusory, plainly false, or contradicted by the record," he is entitled to an evidentiary hearing. *See United States v. Reed*, 719 F.3d 369, 374 (5th Cir. 2013).

The district court's threshold substantive error necessarily stopped short the analysis required by § 2255—having erroneously concluded that Batamula could not establish prejudice because he was warned that he would "likely" be deported after he served his sentence, the district court did not determine whether his pleadings were otherwise sufficient. In order to warrant relief under *Strickland v. Washington*, 466 U.S. 668, 688 (1984), a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384 (citing *Frye*, 132 S. Ct. at 1388-89; *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Batamula's allegations, if proven, meet this standard, and his motion and the files and records of his case do not "conclusively show" that he is not entitled to relief. In his § 2255 motion, Batamula asserted that "[his] plea lawyer did not advise him that a guilty plea to two [crimes of moral turpitude] would render his deportation presumptively mandatory" and that "[i]f [his] plea attorney had correctly informed him about the immigration consequences of his plea, [he] would have plead[ed] not guilty and insisted on going to trial or sought to eliminate one count." In his affidavit, Batamula again asserted that his attorney "told [him] nothing of the legal consequences under the immigration laws of the U.S. to the plea of guilty [he] made to two counts" and

that, had he received the correct information, he would have refused to take the plea and would have attempted to proceed to trial on the original one count indictment, "as that would have been [his] only alternative to avoid deportation." Leroy Simms, Batamula's trial attorney, stated in an affidavit that he "advised [Batamula] on immigration consequences solely based on the language (if any) of the plea agreement provided by the [U.S. Attorney's] office." It is undisputed that the written plea agreement contained no reference to the immigration consequences of Batamula's guilty plea.

Batamula is not required at the initial pleading stage to prove that he could have successfully pleaded to a single count or prevailed at trial. *Powers*, 446 F.2d at 24 ("We express no view as to [the petitioner's] chances of ultimate success in proving his case. We simply direct that a forum be provided him in which to attempt proof of them."). Taken as true, Batamula's statements are sufficient to establish that he received constitutionally deficient assistance of counsel and that but for counsel's error he would not have pleaded guilty to two crimes of moral turpitude. *Cf. Reed*, 719 F.3d at 374-75 (petitioner's allegations of deficient plea advice and resulting prejudice, supported by an affidavit in which he makes "a specific factual claim based on personal knowledge," are sufficient to warrant a hearing under § 2255). The district court thus did not proceed in conformity with § 2255 when it passed over the controverted issues of fact relating to Batamula's own knowledge without granting him a hearing thereon, and the majority opinion ignores this court's appellate duties in failing to correct the district court's error.

III.   Compounding Structural and Jurisdictional Errors Committed by the Majority Opinion

In an attempt to justify the district court's dismissal of Batamula's petition the en banc majority opinion applies the incorrect legal standard and

mischaracterizes the factual record.    The majority opinion states that "Batamula's claim for relief turns on whether he *affirmatively showed* that counsel's deficient advice regarding the deportation consequences of his guilty plea resulted in prejudice." Op. at 4 (emphasis added).    This is a patent mischaracterization of the applicable standard that would place an erroneously heightened burden on habeas petitioners at the summary dismissal stage.    A petitioner is not required to prove with evidence that he is entitled to relief in order to obtain an evidentiary hearing; he must only allege facts that, if proven true, would entitle him to relief. *See, e.g., Powers*, 446 F.2d at 24; *Arrastia v. United States*, 455 F.2d 736, 740 (5th Cir. 1972) (remanding for an evidentiary hearing pursuant to § 2255 because "if [the defendant] can prove that which he has alleged . . . then he . . . must be granted relief").

Then, finding that Batamula failed to meet this exaggerated and unprecedented burden, the majority opinion asserts that summary dismissal was proper because Batamula failed to show that his attorney's deficient performance prejudiced him.    Specifically, the majority opinion argues that "[b]ecause Batamula was already deportable under § 1227(a)(1)(C)(i) *before* he pleaded guilty under the two-count information, it would not have been rational for him to proceed to trial in the hope of avoiding deportability under another subsection of § 1227" and he thus cannot demonstrate prejudice.  Op. at 8-9.    First, and contrary to the majority opinion's contentions, Batamula does not make any assertions relating to his deportability under § 1227(a)(1)(C)(i).    Rather, he alleges that he was attempting to adjust his immigration status at the time of his prosecution by having his marriage to a citizen recognized and that a conviction for two crimes of moral turpitude adversely affected him by rendering him "presumptively" or "manditor[ily]" deportable.    Under these circumstances, seeking to avoid an outcome that

would destroy his chances of adjusting his status and result in near-certain deportation—even by rolling the dice and going to trial in hopes of a long-shot acquittal—would certainly be "rational."

Furthermore, the record as it related to Batamula's immigration status is far from conclusive. Although Scott Stalla, a special agent with the Bureau of Diplomatic Security, testified at the July 29, 2011 detention hearing that Batamula was "out of status currently," and "ha[d] an I.C.E. detainer," he repeatedly clarified that Batamula was not in the country illegally, and he did not state that Batamula was subject to deportation. Josephine Anassi, the immigration attorney who was employed by Batamula's wife to prepare the couple's marriage-based residency applications, testified that even after Batamula's application for residency had been denied three times, "there [is] still a chance that [Batamula] can still get an immigration visa." And Magistrate Judge Nancy Johnson, who presided over the detention hearing, was not called upon to make, and did not make, a conclusive finding as to Batamula's immigration status. The record thus does not demonstrate conclusively that "Batamula's deportability under § 1227 was a *fait accompli* before he pleaded guilty under the two-count information," Op. at 8, and it does not conclusively show that he cannot prove that his guilty plea worsened his chances of avoiding deportation. "The Government's contention that his allegations are improbable and unbelievable cannot serve to deny [him] an opportunity to support them by evidence [at an evidentiary hearing]." *Walker* 312 U.S. at 287. Because the files and records of the case were not conclusive, Batamula was entitled to an opportunity to be heard, "however convincing the [Government's] ex parte showing." *Hayman*, 342 U.S. at 220.

Whether a defendant suffered prejudice is a question of fact that requires determination by the district court. *See United States v. Kayode*, 777 F.3d 719,

No. 12-20630

729 n.9 (5th Cir. 2014) (discussing the "fact-intensive nature of the prejudice analysis"). Batamula's specific factual allegations of prejudice are not fully refuted by the record; the majority opinion's finding that he did not suffer prejudice is based on mere conjecture regarding his immigration status and his likelihood of deportation, not on the files and records of the case. Batamula has therefore adequately raised the issue of whether he was prejudiced as a result of his attorney's failure to advise him of the immigration-related consequences of his plea. *See Powers*, 446 F.2d at 24. To settle that issue without allowing him to present evidence at an evidentiary hearing is to violate § 2255 and to flout the Supreme Court's clear directives. *See Hayman*, 342 U.S. at 220 ("[T]he District Court did not proceed in conformity with Section 2255 when it made findings on controverted issues of fact . . . without notice to respondent and without his being present."); *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963) ("[A] federal evidentiary hearing is required unless the . . . trier of fact has after a full hearing reliably found the relevant facts.").[3]

Finally, even absent § 2255's clear mandate, the majority opinion's decision to reach the Government's fallback arguments that Batamula was deportable even in the absence of the conviction—which the district court itself never reached[4]—is inappropriate and inconsistent with the rules of orderly

---

[3] Although *Townsend* involved a § 2254 petition, the Supreme Court made clear in *Kaufman v. United States*, 394 U.S. 217, 227 (1969), that the same standard applied to both state and federal prisoners. While AEDPA amended the fact-finding procedures for petitions under § 2254, it did not amend those for petitions under § 2255.

[4] The district court considered only the Rule 11 colloquy in holding that Batamula "cannot" establish prejudice as a matter of law, asserting that "even if Batamula's attorney was deficient in failing to inform Batamula of the immigration consequences of his guilty plea, Batamula has not shown that such a deficiency prejudiced him *because before accepting his guilty plea the court informed him that he would likely be deported after he served his sentence*." It is factually incorrect to say that the district court here somehow implicitly applied a totality of the circumstances test.

20

judicial procedure.    In *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982), the Supreme Court observed that it is "elementary" that "[w]hen an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings." And while this court has recognized that we may affirm a grant of summary judgment on any appropriate ground that was raised to the district court, such ground must be one "*upon which both parties had the opportunity to introduce evidence.*"    *Conkling v. Turner*, 18 F.3d 1285, 1296 n.9 (5th Cir. 1994)) (emphasis added).    Because of its erroneous view of the law, the district court did not make factual findings and did not afford Batamula any opportunity to introduce evidence to prove the facts alleged in his habeas claim, including those related to his immigration status.    To affirm on the basis of his purported deportability therefore contravenes established appellate procedure.

Further, to the extent that it decides the question of Batamula's deportability, the majority opinion approaches, if not exceeds, the limits of this court's jurisdiction.    In *Reno v. American Arab Anti-Discrimination Committee*, 525 U.S. 471, 492 (1999), the Supreme Court held that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 deprives federal courts of jurisdiction to decide whether the Attorney General can commence deportation proceedings, adjudicate cases, or execute deportation orders.    Yet by holding that Batamula cannot prove prejudice because he is certain to be deported, the majority opinion appears to have decided that the Attorney General can—and will—commence deportation proceedings against him.    Viewed in this light, the majority opinion rests on a premise that this court lacks the authority to declaim.    *See* 8 U.S.C. § 1252(g); *AAADC*, 525 U.S. at 492.

*

No. 12-20630

The en banc majority opinion affirms the judgment of the district court without expressly correcting that court's serious legal error and without affording the petitioner the opportunity to present evidence in support of his allegation of prejudice. Instead of vacating the district court's decision, which was based on a clear error of law and constituted an abuse of discretion, the majority finds facts at the appellate level from a record that is woefully inadequate and incomplete for that purpose. The majority defaults on its duty to correct errors of law committed by district courts and supersedes the function of the district court in conducting evidentiary hearings and making factual findings in the first instance. As a result, the majority unconscionably casts Batamula out in its error-filled decision based on rank speculation as to Batamula's fate in any future immigration proceedings. Because this resolution is inconsistent with this court's precedent, the requirements of § 2255, and the clear directives of the Supreme Court, I must respectfully dissent.